International Mining Corporation (Incorporated in 1936—Successor Company), Petitioner, *v*. Commissioner of Internal Revenue, Respondent.

Docket No. 107094.    Promulgated September 24, 1942.

*Eliot Bailen, Esq.*, for the petitioner.
*Charles Oliphant, Esq.*, for the respondent.

### OPINION.

Mellott: Respondent has proposed an assessment against petitioner, as transferee of the assets of the International Mining Corporation, of a liability of $36,379.06 representing an alleged income tax deficiency of the latter corporation for the calendar year 1936. Petitioner admits liability for any tax deficiency of its predecessor company but contends that none exists.

The sole question is whether petitioner's predecessor is entitled, either by virtue of a distribution of 400,055 shares of stock of petitioner made by it to its stockholders on December 4, 1936, or by virtue of a cash dividend in the amount of $251,037 paid by petitioner on December 24, 1936, to a dividends paid credit under section 27 of the Revenue Act of 1936, in addition to the dividends paid credit allowed by the respondent, and, if so, the amount thereof.

The proceeding was submitted upon a stipulation of facts. The facts are found to be as stipulated. For present purposes the following summary will suffice:

Petitioner was incorporated under the laws of Delaware on October 29, 1936. Its predecessor, also called the International Mining Corporation and hereinafter referred to as the predecessor company, was incorporated under the laws of Delaware on August 9, 1929. The companies filed income and excess profits tax returns for the calendar year 1936 with the collector of internal revenue for the fifth district of New Jersey.

At the time of its organization the predecessor company issued 500,000 shares of common stock of no par value for $20 per share, totaling $10,000,000. This amount was credited to its capital account as stated capital. On March 3, 1932, the certificate of incorporation of the predecessor company was amended, changing the no par stock to common stock having a par value of $1 per share. The difference of $9,500,000 was credited to capital surplus account. The predecessor company also issued, at the time of its organization, 650,000 common stock purchase warrants, each warrant entitling the purchaser to subscribe to one share of common stock on or before September 1, 1939, at $20. In May 1933 the predecessor company reduced the subscription price of the outstanding warrants from $20 to $10 per share.

The annual earnings and profits or operating deficits of the predecessor company from the date of its organization to December 31, 1935, within the meaning of section 115 of the Revenue Act of 1936, as amended, before any distributions to its stockholders, were as follows:

| | | |
|---|---|---|
| Aug. 9, 1929, to Dec. 31, 1929, operating deficit | | ($930, 559. 29) |
| Calendar year 1930, | do | (311, 691. 79) |
| 1931, | do | (2, 245, 157. 23) |
| 1932, | do | (774, 334. 36) |
| 1933, | do | (532, 156. 07) |
| 1934, earnings and profits | | 306, 471. 04 |
| 1935, | do | 636, 040. 51 |

Upon the creation of the capital surplus of $9,500,000 in 1932, the predecessor company transferred to and charged against it the accumulated operating deficit at December 31, 1931, of $3,487,408.31. Similar action was taken with respect to the operating deficits for the years 1932 and 1933. The earnings and profits of subsequent years were treated as earned surplus and were not combined with the balance of capital surplus at December 31, 1933.

Distributions made by the predecessor company to its stockholders from the date of its organization to December 31, 1935, were as follows:

| Year | Rate per share | Total distribution |
|---|---|---|
| 1932 | $0.075 | $32, 777. 55 |
| 1933 | .15 | 50, 474. 10 |
| 1934 | .15 | 60, 000. 00 |
| 1935 | .65 | 260, 029. 00 |

400,055 shares of common stock and 523,945 warrants were issued and outstanding on December 31, 1935. The differences between these figures and the 500,000 shares and 650,000 warrants heretofore mentioned represent shares or warrants reacquired by the predecessor company and retired and canceled. The balance in the capital surplus account as of December 31, 1935, amounted to $4,312,369.76, computed in the following manner:

| | | |
|---|---|---|
| Capital surplus created in 1932 | | $9,500,000.00 |
| Less: | | |
| Operating deficits to December 31, 1933 | $4,793,898.74 | |
| Distributions, 1932 and 1933 | 83,251.65 | |
| Other items (not here material) | 310,479.85 | 5,187,630.24 |
| Balance at December 31, 1935 | | 4,312,369.76 |

In 1936, a plan of reorganization within the meaning of section 112 of the Revenue Act of 1936 was adopted by the predecessor company, which resulted in the organization of petitioner on October 29, 1936. Pursuant to the plan, the predecessor company's assets, subject to its liabilities, were transferred to petitioner on December 3, 1936. On the following day, in consideration of the transfer, 400,055 shares of petitioner's common stock were issued to the predecessor company. 157,906 additional shares of its common stock on the basis of one share of common stock for three warrants were also issued by petitioner to the holders of the warrants of the predecessor company. The predecessor company distributed the 400,055 shares in exchange for the surrender for cancelation of a like number of shares of its common stock then outstanding, and was dissolved on December 4, 1936.

The value, cost, and adjusted tax basis to the predecessor company of petitioner's common stock, distributed on December 4, 1935, by the predecessor company to its stockholders in liquidation, were each in excess of $5,000,000.

For 1934 and 1935 the predecessor company had earnings and profits within the meaning of section 115 and made distributions to stockholders as follows:

| | | |
|---|---|---|
| Earnings and profits: | | |
| Calendar year 1934 | | $306,471.04 |
| Calendar year 1935 | | 636,040.51 |
| | | 942,511.55 |
| Distributions to stockholders: | | |
| Calendar year 1934 | $60,000.00 | |
| Calendar year 1935 | 260,029.00 | 320,029.00 |
| Undistributed earnings and profits of the years 1934 and 1935 | | 622,482.55 |

The earnings and profits of the predecessor company and the petitioner for the calendar year 1936 and the cash distributions made by these two corporations to their stockholders were as follows:

| | Predecessor 1/1 to 12/3/36 | Petitioner 12/4 to 12/31/36 |
|---|---|---|
| Net income | $466,725.11 | $5,309.37 |
| Normal tax | 55,998.04 | |
| Adjusted net income | 410,727.07 | 5,309.37 |
| Proportion of foreign tax not allowed by reason of limitation | 776.15 | |
| Earnings and profits | 409,950.92 | 5,309.37 |
| Cash distributions to stockholders | 180,024.75 | 251,037.00 |

The distribution of $251,037 was made in cash by petitioner on December 24, 1936, pursuant to a resolution adopted at a meeting of its board of directors held on December 7, 1936. The resolution provided:

WHEREAS, as a result of a transaction described in Section 112 of the Revenue Act of 1936 the earnings or profits accumulated after February 28, 1913, and the undistributed earnings or profits of the calendar year 1936 of International Mining Corporation, incorporated in 1929 (hereinafter referred to as the "Transferor"), have become the earnings or profits of this corporation subject to distribution as dividends by this corporation; and

WHEREAS, this corporation desires to make a distribution of dividends to its shareholders and in connection therewith desires to make an apportionment and allocation to the Transferor as a distribution of such earnings or profits of the Transferor in accordance with the provisions of Article 27 (f)–1 (c) of Regulations 94, the income tax regulations under the Revenue Act of 1936,

NOW THEREFORE, be it

RESOLVED, that a dividend of forty-five cents (45¢) per share be declared on the outstanding capital stock of this corporation, payable in cash on December 24, 1936 to stockholders of record at the close of business on December 17, 1936; and further

RESOLVED, that said dividend of forty-five cents (45¢) per share (or so much thereof as may lawfully be so apportioned and allocated) be and it hereby is apportioned and allocated to the Transferor as a distribution out of the earnings or profits of the Transferor.

The aforesaid distribution of $251,037 was allocated and apportioned on the respective books and income tax returns of the predecessor company and of the petitioner first: as paid out of the current earnings and profits of the petitioner for the period from December 4 to December 31, 1936, to the extent thereof, $5,309.37; second: as paid out of the current 1936 earnings and profits of the predecessor company to the extent thereof, $229,926.17, the difference between its earnings and profits ($409,950.92) and its cash distributions ($180,024.75); and, third: the balance ($15,801.46) as paid out of surplus at December 31, 1936. These amounts were claimed as dividends paid

credits by the predecessor company and the petitioner on their 1936 income tax returns in accordance with such allocation and apportionment.

In the information returns (Forms 1096 and 1099) filed by petitioner with the Treasury Department on or about February 15, 1937, the distribution of the $251,037 made by the petitioner in December 1936 and the prior 1936 distributions totaling $180,024.75 were reported as constituting ordinary taxable dividends in the hands of the recipient stockholders.

Respondent determined that the dividends paid credit of the predecessor company for the purpose of determining its surtax on undistributed profits for the calendar year 1936 was $180,024.75, the amount of the dividends paid by the predecessor company between January 1 and December 3, 1936. He refused to allow any dividends paid credit to the predecessor company on account of the distribution of $251,037 made by petitioner on December 24, 1936, or on account of the distribution of the 400,055 shares of stock of petitioner made by the predecessor company on December 4, 1936.

The parties have stipulated that:

\* \* \* If Article 27 (f)-1 (c) of Regulations 94 is applicable to entitle the \* \* \* [predecessor] company to dividends paid credit as a result of the distribution of $251,037.00 made by petitioner in December 1936, then the \* \* \* [predecessor] company and petitioner have otherwise complied with all requirements of the aforesaid article.

The portion of article 27 (f)-1 (c), *supra*, relied upon by petitioner, is shown in the margin.[1]

The record in the instant proceeding does not indicate why the respondent reduced the dividends paid credit to the amount of cash paid by the predecessor company prior to the reorganization. As we interpret the stipulated facts there were "one or more transactions described in section 112" and as a result the "undistributed earnings or profits" of the predecessor company became "the earnings or profits of another corporation [petitioner] subject to distribution as dividends by such other corporation." The dividend of $251,037 was paid "by the transferee corporation during \* \* \* [a] portion of the transferor's taxable year subsequent to the consummation of such tax-free transaction" and respondent admits that petitioner and the predecessor company "have otherwise complied with all the requirements

---

[1] If, as a result of one or more transactions described in section 112, a corporation's earnings or profits accumulated after February 28, 1913, and its undistributed earnings or profits of the taxable year, shall have become the earnings or profits of another corporation subject to distribution as dividends by such other corporation, any dividend paid by the transferee corporation during that portion of the transferor's taxable year subsequent to the consummation of such tax-free transaction may, subject to the provisions of section 115, be apportioned and allocated to the transferor as a distribution out of such earnings or profits of the transferor. \* \* \*

·of the aforesaid article." No good reason is therefore apparent for the disallowance of the claimed deduction save the possibility that the regulation may be invalid; but since neither party has advanced ·such theory we assume that it is valid. If we were required to decide the point, it would seem that the regulation should be upheld; for it is equitable and fair, both to the fiscus and to the taxpayer, and consistent with the spirit of the Revenue Act of 1936 as well as with the rationale of *Sansome* v. *Commissioner*, 60 Fed. (2d) 931; certiorari denied, 287 U. S. 667, which has been applied in many subsequent cases. See, e. g., *Murchison's Estate* v. *Commissioner*, 76 Fed. (2d) 641; *Baker* v. *Commissioner*, 80 Fed. (2d) 813; and *Harter* v. *Helvering*, 79 Fed. (2d) 12.

From what has been said it is obvious we are of the opinion respondent erred in denying the claimed credit. We place our conclusion squarely upon the regulation and the payment of the dividend ·of $251,037 rather than upon the possible alternative theory that the distribution by the predecessor company of the stock of the transferee (petitioner) may have entitled the former to a dividends paid credit under section 27 (f). Such a contention was made in *Reed Drug Co.*, 44 B. T. A. 573, but found to be unsound. Inasmuch as that case has now been affirmed by the Circuit Court of Appeals for the Sixth Circuit (*Reed Drug Co.* v. *Commissioner*, 130 Fed. (2d) 238) we pass, without discussion, petitioner's suggestion that it is wrong in principle and should be overruled.

It is not clear whether other adjustments made by respondent to the net income reported, result in a deficiency in tax; therefore,

*Decision will be entered under Rule 50.*